UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSEPH G. COQ a/k/a GEORGES JOSEPH COQ a/k/a   :
JOSEPH GEORGES COQ,                                           :
                             Plaintiff,                              :
                                            :

                                            :      MEMORANDUM &
     -against-                                                  :      ORDER
                                            :      17-CV-4401 (ILG) (RER)
WYCKOFF HEIGHTS MEDICAL CENTER, MONICA :
GONZALEZ, DEBORAH SIRICA, AND MAUD               :
BERTONI, M.D.,                                                        :
                          Defendants.                          :
                                            :
                                            :
------------------------------------------------------------------------x
GLASSER, Senior United States District Judge:

Plaintiff commenced this action alleging that Wyckoff Heights Medical Center and the three named individual defendants were guilty of racial discrimination, subjecting him to a hostile work environment, and retaliation, in violation of 42 U.S.C. § 1981, the First Amendment to the United States Constitution, the New York State Constitution, and the New York City Human Rights Law, NYCHRL § 8-107, et seq.  Compl., Dkt. 1.  Pending before the Court are the Defendants' motion for summary judgment, Dkt. 33, Defendants' motion to strike Docket Entry 41-1 from the case docket, Dkt. 44, and Defendants' motion to strike portions of Plaintiff's summary judgment opposition papers, Dkt. 45.

A clinical reading of the Plaintiff's complaint and his deposition testimony as provided in the record drives the Court to grant the motion for summary judgment upon that reading without more.  The Court is not unmindful of this irreverent disposition which, impliedly asks *soto voce*, should the Court be expected or obligated to "do more" in this case.

By "this case" is meant a complaint of 62 paragraphs relating variegated workplace incidents of no apparent moment.  Indeed, none of the statements in the complaint alleged to have

been made to the Plaintiff by his supervisor have anything to do with his race and the alleged statements appear on their face to be race neutral.

It is interesting to note that although Plaintiff describes in his complaint Defendants Gonzalez and Sirica as White Hispanic and Caucasian, respectively, he makes no reference at all to Defendant Dr. Bertoni, the Director of the Blood Bank, who terminated him and who is, as he also is, Haitian.  It is also of more than passing interest that, between 2014 and 2017, the Blood Bank technologists of which he was one, were all of minority descent.  Def. Mem. at 4 n.2, Dkt. 34; DSOF ¶¶ 50-53, Dkt. 35; PSOF ¶¶ 50-53, Dkt. 42.

Added to the glaring absence of claimed actual racial discrimination and meritless assertions of hostile work environment and retaliation is the Plaintiff's own acknowledgement that he experienced no racial or any other discrimination.  Indeed, the following facts, taken directly from Defendants' Rule 56.1 statement, are not disputed by Plaintiff:

> Plaintiff admits that Ms. Gonzalez **never** made any comment or joke about his race or where he came from.  DSOF ¶ 160; PSOF ¶ 160 (emphasis in original).

> Plaintiff admits that the only reason he believes Ms. Sirica discriminated against him is, "In *my opinion*, she back up the main person that was discriminating [*sic*] me."  DSOF ¶ 161; PSOF ¶ 161 (emphasis in original).

> Plaintiff admits that he has no other evidence that Ms. Sirica discriminated against him.  DSOF ¶ 162; PSOF ¶ 162.

> Plaintiff admits that he has no evidence that Dr. Bertoni discriminated against him.  DSOF ¶ 163; PSOF ¶ 163.

> Plaintiff admits that the manner in which Defendants administered competency tests was not racially discriminatory.  DSOF ¶ 171; PSOF ¶ 171.

Portions of Plaintiff's deposition testimony paint a similar picture:

> **Coq. Dep. Tr. 172:17-173:5, Dkt. 36-1**
> Q:              . . . Did [Ms. Gonzalez] ever make fun of you based on where you came from?

PLAINTIFF:   Not in my presence but probably before other people.

Q:            But do you know one way or the other?

PLAINTIFF:   Not in front of me.

Q:            What about your race, did she ever ridicule you or demean you in a way that was overtly racial?

PLAINTIFF:   Not that I recall or I do not remember for now.  But it has been more and more and more.

**Coq. Dep. Tr. 232:23-233:14**
Q:            But independently of Ms. Gonzalez, did Ms. Sirica intend, in your opinion, to discriminate against you?

PLAINTIFF:   Not that I recall.

Q:            The same question of about [*sic*] Bertoni.  Independently of anything that was happening with Ms. Gonzalez, do you think Dr. Bertoni intention [*sic*] actually discriminated against you?

PLAINTIFF:   No.   But since they back up or sided with the person that is been complaining about harassment and about discrimination so that's why I believe that they are on the same side like the discriminator like Mrs. Gonzalez.

**Coq. Dep. Tr. 255:16-23**
Q:            And do you think that [the way an evaluation was administered to Plaintiff] was racially discriminatory?

PLAINTIFF:   Not racially discriminatory but they had the purpose.

Q:            What purpose?

PLAINTIFF:   To make me feel incompetent or to fail me the test, that I'm taking too long.

**Coq. Dep. Tr. 260:25-261:10**
Q:            My question to you was why do you think the false accusation [purportedly made against Plaintiff for using another employee's password] was racially motivated?

PLAINTIFF:   I don't know if it is - - I could say everything racial, stealing, I'm stealing Dr. Thelmo's password, I'm doing everything there, I'm a liar in medicine. So I don't know what she was proving, racial, competence, stealing Wyckoff things, password.

Plaintiff also does not dispute numerous references to issues with his job performance both before and after his claimed protected activity – namely, (1) his alleged refusal "to participate in what he believed was a race discrimination [sic] by Ms. Gonzalez against [a colleague] from the latter part of 2015 until February 2016" where Plaintiff was purportedly asked to "obtain dirt on" the colleague; and (2) his assertion that he complained to the hospital's human resources department in December 2016[1] "about what he believed was a racially motivated harassment of himself by Ms. Gonzalez." Opp. Mem. at 6. He does not dispute, for example, that he failed a state-monitored proficiency exam in 2015, that his failure "placed the Blood Bank at risk," that "his error was serious and capable of harming a patient," and that he was issued a "final disciplinary warning" on April 8, 2015 related to his failure. DSOF ¶¶ 78, 81, 83, 89, 92, 93; PSOF ¶¶ 78, 81, 83, 89, 92, 93. The final warning states:

> On 3/16/15 we received the attached evaluation of our NYS Proficiency results from February 9th 2015. The results indicated that there was a discrepancy on one of the samples which you worked on and reported. This has put the Blood Bank at risk. When I reviewed the results with you before submitting, you indicated that you performed the phenotype and the crossmatch as required and that you were satisfied with your results. Last week, I personally retested the sample in question and the results were the same as the NYSDOH[.] This is a serious error, capable of harming a patient. Therefore you cannot continue to work alone. Since you are currently on a one person shift, you must be moved to the vacant 3:30pm to 11:30pm position permanen [sic] [.] We will also need to review your work for the next few months and competency needs to be re-establish [sic] [.] This will be reported as corrective action to the State. This final warning applies only [sic] patient safety issues. This shift change will take in effect as of 4/22/15.

DSOF ¶ 91; PSOF ¶ 91; Def. Mem. Ex. Z, Dkt. 36-26. In light of Plaintiff's failure, the New York State Department of Health required the preparation and documentation of a "corrective action plan" to address and remediate Plaintiff's performance issues. DSOSF ¶ 86; PSOF ¶ 86.

---

[1] Plaintiff's purported complaint to the human resources department was evidently raised for the first time in his opposition to summary judgment, and notes that Plaintiff "complained to Mr. Fotti of Wyckoff HR in December 2016 that Ms. Gonzalez was racially harassing [him] and omitting [his] name from the weekly work schedule." Coq. Decl. at ¶24, Dkt. 40.

4

Plaintiff was given an annual competency test in December 2015 and received a rating of "Doesn't Meet Standard (follow-up required)" for five categories.  DSOF ¶¶ 94-96, PSOF ¶¶ 94-96.  In a performance review covering December 2014-December 2015, Plaintiff received a rating of 2.4/5.  DSOF ¶ 99; PSOF ¶ 99.

Following a medical leave taken from February 2016 until September 2016, Plaintiff took additional competency exams.  DSOF ¶ 104; PSOF ¶ 104.  Defendants assert that Plaintiff "failed the competency tests that were administered to him."  DSOF ¶ 105.  Plaintiff, citing no evidence in the relevant paragraph of his counter Rule 56.1 statement, "dispute[s] that [he] failed the competency tests administered to him but admits that Defendants documented that [he] failed the tests."  PSOF ¶ 105.

On October 12, 2016, Plaintiff met with Dr. Bertoni, Ms. Sirica, Ms. Gonzalez, and a union representative.  While Plaintiff asserts that he complained about Ms. Gonzalez's "harassment" of him during the meeting, PSOF ¶107, the parties do not dispute that the meeting also concerned Plaintiff's job performance and the development of a subsequent "corrective action plan" for Plaintiff, which would include weekly competency tests, among other action items.  DSOF ¶ 108, PSOF ¶ 108.  It is further undisputed that "Plaintiff was advised that his failure to pass the weekly competency assessments could result in termination."  DSOF ¶ 111; PSOF ¶ 111.

Plaintiff was given roughly fifteen competency exams between October 2016 and January 2017 and received low scores on some of the assessments.  DSOF ¶ 112-115; PSOF ¶ 112-115.  Indeed, Defendants assert that "[b]y January 2017, Plaintiff had failed numerous competency tests."  DSOF ¶ 118.  Plaintiff counters that "[a]t most, [he] had failed only 4 out of 15 competency tests."  PSOF ¶ 118.  Given Plaintiff's failures, Dr. Bertoni, Ms. Sirica, and Ms. Gonzalez made the decision to terminate him.  DSOF ¶119; PSOF ¶ 119.

On January 19, 2017, Plaintiff, Dr. Bertoni, Ms. Sirica, Ms. Gonzalez, and a union representative convened for a "termination meeting." DSOF ¶ 120; PSOF ¶ 120. At the meeting, however, Plaintiff explained that the corrective action plan from the October 12, 2016 meeting had not been appropriately followed by Ms. Gonzalez and that "he was having problems getting information from and communicating with [her]." DSOF ¶¶ 121-22; PSOF ¶¶ 121-22. Because Ms. Gonzalez had not properly adhered to the October 2016 action plan, "Plaintiff was not terminated and was given *another* chance to improve and establish competency." DSOF ¶ 123; PSOF ¶ 123 (emphasis in original). A revised corrective action plan was issued and Plaintiff was again "advised that his failure to pass competency assessments would result in his termination." DSOF ¶¶ 124, 128; PSOF ¶¶ 124, 128.

By March 2017, Dr. Bertoni had come to the conclusion "that Plaintiff had failed to improve over the six-month period." DSOF ¶ 138, PSOF ¶ 138. Her observations regarding Plaintiff's job performance were summarized in a March 16, 2017 statement, which reads:

Statement from Dr. Maud Bertoni, Director of the Blood Bank

March 16, 2017

During the last two months while we have been evaluating Georges Joseph Coq's performance in the Blood Bank Laboratory I have come to the conclusion that although he has been doing a lot of reading, he is not able to apply what he read into the testing. There is no rationale to his thinking and he is confused. He cannot come to a definite conclusion in his answers. He is also unable to explain why he decides on answers to the competency testing. He also takes too long to perform the testing, which would seriously delay reporting of patient results.

He is unable to accept constructive criticism and is often very argumentative. This has a strong negative impact on his learning.

As a result, I do not feel that Mr. Coq is competent to work in the Blood Bank as a Technologist. He is making mistakes and will cause detrimental outcomes for our patients.

Sincerely,

6

Maud A. Bertoni, MD
Director of Blood Bank, Laboratories of Wyckoff Heights Medical Center

DSOF ¶ 139; PSOF ¶ 139; Def. Mem. Ex. WW, Dkt. 36-49.  On March 16, 2017, Plaintiff met

with Dr. Bertoni, Ms. Sirica, Ms. Gonzalez, and a union representative and was advised that "he

was being terminated for quality of work and patient safety issues."  DSOF ¶ 140; PSOF ¶ 140.

One searches in vain for a material issue of fact or cognizable triable cause of action which

would obligate the Court to do more here.  A dispassionate reading of the pleadings and the Rule

56.1 statements of fact permit only of the conclusion that the Plaintiff was terminated for

incompetence and that his continued employment would put the hospital patients at risk.

To "do more" means reciting the prerequisites for a successful motion for summary

judgment, a recital which appears in Court opinions literally thousands if not tens of thousands of

times, and has long since ceased to make any contribution to the growth of the law or further its

understanding.  To "do more" would also entail a discussion of the various legal considerations

informing the claim of racial discrimination perceived by allegations of verbal harassment or

adverse work action, or denial of requests to transfer to another department, and claims of

retaliation and a hostile work environment, none of which are factually or legally sustainable here

as violative of § 1981, or the New York State Constitution, or the NYCHRL, or the First

Amendment to the U.S. Constitution.

A 37-page discussion of the law on all of those issues in the Defendants' memorandum of

law in support of their motion for summary judgment and their 10-page reply memorandum would

have been needlessly undertaken by the Court in a thinly disguised exercise in plagiarism of those

memoranda reflecting laudable scholarship of diverse areas of the law the facts don't warrant.  The

conclusion they do warrant is that the Plaintiff was terminated because he was not competent to

efficiently discharge the obligations of the job to which he was assigned, and not because of his

race, or his alleged refusal to spy on a colleague, his purported complaint to the hospital's human resources department, or claimed feelings about his supervisor's preferred treatment of other employees.  The Defendants' motion for summary judgment is granted.

As regards Defendants' other pending motions, the motion to strike Docket Entry 41-1 from the docket, Dkt. 44, is granted as unopposed.  The motion to strike portions of Plaintiff's summary judgment opposition papers, Dkt. 45, is denied as moot in light of the Court's ruling on summary judgment.  The Clerk of the Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

_____/s/_____
I. Leo Glasser, U.S.D.J.

Brooklyn, New York
July 27, 2021